Case No. 14-1001 Jameson John Dupuy, Petitioner v. National Labor Relations Board Mr. Dupuy for the petitioner, Mr. Callahan for the respondent Jameson Dupuy, Petitioner v. NLRB Case No. 14-1001 Jameson John Dupuy, Petitioner v. National Labor Relations Board Good morning and may it please the court. My name is Jameson Dupuy and I'm the petitioner in this case. I'd like to reserve three minutes of my time for rebuttal if I may. This case is about the National Labor Relations Board unlawfully modifying, conditioning, preventing, and delaying various aspects of a make-whole remedy that's contained in a final judgment of enforcement that had been issued by the First Circuit Court of Appeals approximately three and a half years ago. There are four major points I'd like to make this morning. First, pursuant to Section 10E of the National Labor Relations Act, 29 CFR Sections 101.15 and 102.52, this Court's three decisions in Scepter, Inc., George Banta Company, and the City of Cleveland, the Law of the Case Doctrine and the Mandate Rule, once a United States Court of Appeals has issued a judgment to enforce a make-whole remedy that the Board has specifically fashioned to effectuate the policies under the National Labor Relations Act, the Board and its regional director are mandated to seek and obtain full compliance from all persons who are obligated under that final judgment of enforcement and any actions that are taken or withheld by the Board or its regional director that in any manner, directly or indirectly, modify, condition, prevent, or delay any aspect of that make-whole remedy containing that final judgment of enforcement is an ultra-virus act which must be declared unlawful by this Court. This is my second point. The regional director's compliance determination and the two orders that were issued by the Board are arbitrary and capricious and not the product of reasoned decision-making. This is so because the Board and its regional director did not cite any evidence or any legal authorities to support their findings and conclusions. Moreover, the Board and its regional director did not explain why they departed from well-established Board precedent or why they disregarded any evidence that was contrary to their findings and conclusions. And this ties into my third point. This Court should give no weight to any of the counter-arguments that were made by the Board in its answering brief because those counter-arguments are post hoc rationalizations that are not supported by substantial evidence. Moreover, the regional director did not provide the Board with any evidence to support her compliance determination just as the Board has not provided this Court with any evidence to support its two orders in this case. Regarding this lack of substantial evidence, I draw this Court's attention to the Board's certified list of records, footnote number 5 on BSA page 109 on the Board's supplemental appendix, and footnote 11 on page 10 of the Board's answering brief. Finally, my last point. Not only is the Board's proposed standard of review contrary to the law this circuit has cited in my briefs, but the Board's proposed standard of review is completely in a posit to the facts in the procedural posture of this case because the Board's proposed standard of review is based upon a fatally flawed issue statement. This is so because the Board has omitted from its proposed issue statement the critical fact that the rights and obligations that the Board and its regional director had compromised in this case were rights and obligations that arose under a final judgment of enforcement that had been issued by a United States Court of Appeals. I have a question for you, Mr. Dupuy. You spend a lot of time in your brief arguing that the Board should be required to go to seek assurances from the president of the company, right? To an extent, yes, Your Honor. Yeah. And the Board, when the Board negotiated the interest award here, it did so because it thought that that award might be enough to convince the company to close down, right? I'm not sure I understood you, sir. One of the reasons the Board gave for negotiating the, for conceding on the interest payment. On the interest, waiving the interest. Yeah, waiving the interest was to avoid putting a heavier financial burden on the company, right? I don't believe that is necessarily correct, Your Honor. It was to induce them into settling for sure. But I don't know if it had anything to do with the financial stability of the company. Well, didn't the Board worry about the financial stability of the company in its order? So it's been alleged, yes. As far as I know, they are a judgment-proof company according to the, what the Board. Well, here's my question. Suppose we don't, just suppose, this is hypothetical, suppose we don't think that you've met the burden here for forcing the Board to go after the President of the company in some way. Are you still willing to risk this award in this case? In other words, suppose that's off the table. Going after the President of the company. Yeah, suppose that's off the table. Well, there's still three important issues here. One of them is the reinstatement of my job. That's still on the table regardless. I understand. And also the waiver of the interest is probably the most troubling one for me because of Scepter, Inc. Scepter, Inc. is very clear. The Board cannot modify a remedy in a final judgment of enforcement. I don't know how to get around that. All right. Can I ask you about the reinstatement and what, the Board reasoned that the terms you were offered were equivalent to those offered of other right-of-way agents at the time. Is there evidence in the record that you put in showing that other right-of-way agents at that time were getting different benefits? I have no evidence of what the other agents were offered by the Board. The only evidence I have is what I had made in my position before I was unlawfully terminated. And as I read the initial. That was a decade before the offer of reinstatement. Right. But the make-or-break remedy is to put me back into my former position, which doesn't exist, or a substantially equivalent one. And I've cited cases in there where if the monetary amount is not substantially equivalent, then the position is not substantially equivalent. Likewise, what's missing in this case is a lot of facts. How do you know exactly how this wasn't financially equivalent? Because you had to look for what the state of this position was at the time you were getting reinstated. Right. Had you stayed in your job that whole time, presumably your job would have changed and morphed so that you would have been in the same position as current right-of-way agents. So without knowing what current right-of-way agents get, how can we know it wasn't valid? The thing about the right-of-way work is that the projects are temporary, but the positions are not. And that's been something that's been overlooked by this entire – well, not – but the courts below. There are people working – that had been working for this employer for four years at a time. People don't always want to go to the projects they're asked to go to, and they decide not to, and they leave and they go somewhere else. But at the end of the day, when I – when you had a – in my position, I was – I had a six-day job. The job they offered me was either five or six. They didn't even provide me with a copy of the contract that they wanted me to sign. How could I determine if it's substantially equivalent to what I had before if I don't have the facts to make that decision? Putting you in the position you would have been in but for the term of unlawful termination is not the same thing as giving you the terms you would have had 10 years earlier. Not necessarily, no. But it is a matter of giving you the terms presumably you would have had because others have them now. Again, I don't – I don't even know – I do not know what the others have on that project. I didn't even know how many different projects the employer had going at this time. Let me just go back to something at the outset of this case. You talked about the standard of review. Right. The board wants us to apply the ordinary APA standard of review, correct? I don't believe so. They want to apply that the issue of withholding agency action for piercing a corporate veil and reinstatement should be held to non-reviewable. Oh, I'm talking about with respect to the entire matter of the order before us, the order under review. They have asked for abusive standard. What? Abusive standards is the standard of review they've asked for. Abusive. Abusive discretion. I'm sorry. Abusive discretion. Abusive discretion. Okay. But you're here telling us that the board's obligation – that it failed its obligation to adhere to the order issued by the Third Circuit. First Circuit. First Circuit, right. And you could have taken this case to the First Circuit, could you not? That's correct. And have them interpret the order because you're offering us an interpretation under which what the board has done here, particularly with respect to interest, is de facto a modification of the decree, and they didn't go back to the First Circuit and ask for a modification. That is true, but this circuit is open to the entire country, and it's – Oh, yes, there's no question of that. Right. You could bring it here. You have brought it here, and now you're asking us to interpret what the First Circuit order means. But the make-whole remedy that was in my case is pretty much a cookie-cutter. It's a pretty standard make-whole remedy order. Well, if this case is no different than any other simply because it's been concretized in a First Circuit judgment, then, surely when the board is ordered in the run of cases – or not is ordered, but when the board orders an employer in the run of cases to make an employee whole and then goes into a compliance hearing, it must have the discretion to accept something that is less than truly whole because of a judgment that either there's nothing there or that it would be not in the board's interest in terms of litigation resources or the employee's interest in terms of probability of prevailing. And that's a good point. But in my case, there was no compliance hearing, and I was completely excluded from any part of the settlement talks. Actually, there wasn't a hearing. There was just a negotiation. A negotiation. Although the employer apparently turned over or made available its records concerning employment. Yes, but the regional director did not make those records available to the board. The board didn't review those when they made their decision, nor had they made it available to this court. Well, when you say the regional director didn't make them available to the board, I mean the board could have asked for them if it wanted them, right? That I don't know. Well, surely. The regional director works for whom? General counsel? But the board did not make those records available to this court. Have you asked them to? No, sir. Well, not surprising then. Okay. Have you been paying taxes on the back pay? Yes. As a matter of fact, I am. I found out when I was reviewing my Social Security benefit statements that I get every year that I was actually the employer had been filing W-9 or W-2s with the IRS, but I wasn't receiving the W-2s because they were using their own post office box as my address. So I had to go back and file amended returns and pay state and federal income taxes on these checks, which are sitting in a desk drawer up in Boston, and I have never received. You paid income tax on them? Yes, sir. Even though you hadn't received them? That is correct, and that's in my debt. Was that your advice? Were you advised to do that by tax counsel? Well, I used to work for the Internal Revenue Service as an estate and gift tax attorney, and I used to work for Pete, Mark, and Mitchell as a tax attorney. So why were you liable for a tax on an income you never received? Because I ordered my tax transcripts from the income and wages transcript from the IRS, and they show that this has been reported to the Internal Revenue Service. That doesn't mean it's correct. That is correct, and I filed a return, and I stated in there that, you know, this is to cut off any continuing interest or any penalties. I mean, I'm pretty much trying to rock in a hard spot. Okay. Okay. Did you have another question? Thank you. Okay. Thank you. Mr. Dupuy. Good morning, Your Honors. Douglas Callahan, appearing for the National Labor Relations Board. Petitioner is incorrect about the standard of review. This court has said repeatedly in its decisions that when considering the settlement decisions of the National Labor Relations Board, the proper standard of review is abuse of discretion. But is that in cases where the board's order has been enforced by a court? This court has not had such a case, Your Honor, and so, no. We haven't? What about Carpenter and Millwright? Yeah. Carpenter and Millwright, excuse me one second. In Carpenter and Millwright, the case was, the issue was being, the issue under review was whether the board had correctly determined that the company's corporate veil should not be pierced. Which was a post, a remedial stage. That's right, Your Honor. And there we did substantial evidence standard of review. I'm trying to figure out why that's not binding on us. It would be if the standard of review were articulated. Let's see. We applied a substantial, sure, it looks like a substantial evidence analysis to me. Evidence sufficient to support its finding. Veiled to provide evidence sufficient to support its findings and disregarded evidence. That sounds like a substantial evidence analysis. Crucially, Your Honor, that wasn't a settlement case. Why does settlement matter rather than whether this is a board disorder imposing a remedial remedy enforcing a court order or whether it's pre-court order? Isn't that, why would a settlement be different? Settlement is a crucial element in this case because the board has recognized in the two textile workers cases as well as in the garment workers case that the board has broad discretion to settle cases. But again, those were before there was a court order enforcing the board award, right? Right, those were pre-orders. You seem to think settlement, non-settlement matters, and I'm questioning whether what matters is whether your job is to take a court order and implement that relief at the compliance stage versus whether you're pre-court order, you're in the general litigation mode where settlement is always part of the discussion and part of your authority. I would argue that the board order before this court, the board order that was eventually issued by the board after going through the appeal process, at least in section 102.53 of the board's regulations, that's a different sort of board order than the board order that was before this court in local 20, in Carpenters and Millwrights. Are you seeking compliance with the board order or with the court order enforcing the board order? I thought you were doing the latter. One more time, Your Honor. Are you seeking compliance with the court order or with the board order? The board has throughout this case been seeking compliance with the board order enforced by a decree of the First Circuit. Enforced by the First Circuit. What's on review before Your Honors is not an application for enforcement. We're not seeking any enforcement of a board order before Your Honors. We're here on a petition for review of a final board order. Compliance determination, yes. Of a compliance order. Of a compliance order, yes, Your Honor. Which is what was reviewed in Carpenter and Millwright. Is what was reviewed in Carpenter and Millwright. For substantial evidence. Substantial evidence, but I don't think that's – even if the substantial evidence standard does apply under section 10F, it doesn't mean that the recognized discretion of the board to settle matters doesn't strongly inform the standard of review. Well, indeed, the court order here merely enforced the terms already spelled out by the board, correct? It did, right. Even to the point of by the board specifying the method by which interest would be calculated. So I think your position is that the court's enforcement of that order carries with it all of the usual qualifications and prior interpretations, accepted practice, and standard of review. Presumably, yes. In other words, the court order adds only the possibility of contempt. The court order enforcing the board's order, if not complied with by the employer, could result in an order of contempt. That's true, Your Honor. Contempt would be the final step. Absent the court order, everything else would be the same.  Well, you wouldn't even be able to go directly to contempt as of the moment that the First Circuit enforced by decree the board order because that order left undefined certain aspects of the remedy. For example, it ordered that Mr. Dupuis be made whole. It didn't specify a liquidated amount. It didn't say exactly what kind of offer or reinstatement should be presented, and that's in keeping with the traditional National Labor Relations Board's approach to effectuating its orders. It's a two-step process. First, enforcement of the offer. You're introducing the failure to specify a liquidated amount. I think you're weakening the argument in your own favor, frankly. The board's order didn't do that either. It hadn't yet been determined. It hadn't yet been determined but was going to be determined in a compliance proceeding. That's right. Is 11 1⁄2 years for doing back pay normal? That seems an extraordinarily long period of time to me. It might seem like a long time, but you have to keep in mind that this is $18,000 being paid every year to Petitioner by the company. It doesn't sound that impressive to me for a company, but I'm really asking you, based on your experience, how many other times have you seen a back pay order to an individual stretched out over 11 1⁄2 years without any interest? In circumstances like this where the company is judgment-proof, I haven't seen a case like that. You haven't seen other? But the fact that the company is judgment-proof is determined. Surely that's not unusual. Surely you deal with other companies for which there's some risk of this. Sure, judgment-proof companies appear before the board all the time, but when a judgment-proof company does appear before the board and engages in good faith and settlement and shows us their books and shows that there is going to be no recovery if we take them to a compliance proceeding or that the recovery is going to be pennies on the dollar. If you added interest, they would have gone belly up? That's what you're determining, the board's determining? Your Honor, they couldn't have even satisfied the $202,000. I'm not saying a lump sum. I'm saying had you added interest in over the 11 1⁄2 years, they couldn't have done that? Well, it would have extended the installment plan several more years. Why? You just increased the installment plan a little bit, so that includes interest. I'm not extending it more than 11 1⁄2 years. I'm suggesting if you had included the interest that the board order said it was going to include over the 11 1⁄2 years, is there anything in the board decision that says they couldn't do that without risking losing everything because it's a judgment-proof entity? What the record reflects is that this is the best deal that the compliance officer could get from the company. What the record reflects is that this is a judgment-proof company and the CEO of this company was receiving a salary of $150,000 roughly, and every dollar that was being paid to Mr. Dupuy on this installment plan was a dollar taken away from the CEO's salary. So we were dealing with a zero-sum game here in which every additional dollar per year that we asked from this company was one. Was that all in the board decision? I didn't see that in the board decision about how his interest would come out of the CEO's pocket. Was that in the board decision? It was in the board's opposition to Mr. It was in the general counsel's opposition to Mr. Dupuy's request for review before the board. Is that part of the board decision under review? I believe so, under 102.53D. It's part of the record to me. It's part of the record, but the record It's not the rationale under review for not giving interest. Well, the board's decision was that under the circumstances, the general counsel did not abuse its discretion in accepting this settlement agreement. And that $150,000 I really just think 11 and a half years after they've already had a decade between the violation and the order to begin with, and then 11 and a half years without interest, even though the board order that the First Circuit enforced said there would be interest. It's hard for me to understand, and I don't see anything in the board decision that substantiates the judgment that you're explaining to me that they couldn't include interest. $40,000 spread over 11 and a half years, one month at a time, was going to do everything other than if what you mean by it when I don't see that mathematical computation or explanation. And two, if the answer is, wow, if we really make it hard, he's going to deliberately wrap up this company to avoid the court judgment, why the board would say we need to cave in to something like that? The board certainly didn't cave in. These were good-faith settlement negotiations, but at the same time contentious ones in which the board was trying to get the most that it could. Continuing on this interest point that Judge Millett's asking about, the board's order refers specifically to the board's decision in New Horizon, right? Excuse me? The board's decision in New Horizon, that's, in other words, it says, interest shall be computed in accordance with New Horizon, correct? Correct. And you're not arguing, you can see, don't you, that this order, this interest waiver does not comply with New Horizon, correct? Well, again, the petitioner is receiving interest for the entirety of the back paper, $78,000. Let me just, New Horizon requires that interest be computed until compliance with the order has been achieved. That's the language from New Horizon. Now, that's not being done here, correct? Because you've waived some of that interest. We have waived some of that interest. The board's waived that interest. Only over the installment plan. But do you agree with me that as drafted, the decree, the remedy that the board approved does not comply with New Horizon, right? How can it? Because, I mean, what I would say is that, was New Horizon interest given over the course of the installment plan? No. But that's not what New Horizon says. New Horizon says interest must be computed until compliance with the order has been achieved. Now, don't you agree that's not happening here? Well, Your Honor, I mean, I think that is actually the answer. I mean, until compliance has been achieved. I mean, the compliance determination did actually signal the end of interest in this case. Once the settlement agreement. You mean they comply now even though they won't, the company won't have paid him for, what is it, 11 years? We'll pay him for 11 years. Now, eight years. Well, whatever. You understand my point. So your position is that this is in full compliance with New Horizon because the board fully complied when it signed a document saying that it would pay him back pay over 11 years. And he doesn't get interest for those 11 years. I just, I don't see how you can read New Horizon that way. I mean, I can understand you saying, yes, it doesn't comply with New Horizon because we felt that an order in strict compliance with New Horizon would push the company over the edge and it would go out of business. That's what I thought your argument was. I don't believe that New Horizon dictates under what circumstances the board can waive interest during an installment plan that is negotiated with a judgment-proof company. I don't believe that New Horizon is that. Do you have a case? Can you cite a board decision that says or a decision of this court that says that in terms of measuring New Horizon compliance that the key date is the date the board signs, the employer signs an agreement to pay future funds? I can't, Your Honor. No. I can refer you to the discretion that the board has to have in negotiating these settlements. Do you think there's any difference in the discretion you have before a court enforces an award and after a court enforces an award? Or is it completely the same? Well, the question is does the degree of our discretion differ between before enforcement and after enforcement? Under amalgamated utility workers, I don't believe it does. So the fact that a court has said that there's an order that shall include back pay and interest is irrelevant. You and the company can essentially ignore that as long as you two agree. It's the board's order to enforce, and the Supreme Court is extremely specific about that. Amalgamated utility workers dealt with exactly this situation. But in amalgamated, wasn't – I'm sorry. Are we talking about the same amalgamated? I thought there – the question was whether the employee could seek contempt against the employer. Am I looking at the right amalgamated case? Whether the union could seek contempt. I mean the union. I'm sorry. Yeah. That's not what's happening here. Here the employee is trying to enforce the board's order as approved by the First Circuit. And he's – but it's not his place to enforce that order. The Supreme Court said – I was just asking why you cited amalgamated. It seems to me to be a very different case. I think certainly the technical holding of amalgamated is different, but you cannot ignore this discussion by the Supreme Court. The Supreme Court says, and I quote, the decree by the Court of Appeals in no way alters but confirms the position of the board as the enforcing authority, not the position of the charging party, in that case a union. Yeah. Amalgamated utility workers, although technically it's a case about standing for contempt. Had the order in that case been affirmed by a court of appeals? It had been. It had been? It had been. And that's why the Supreme Court refers to the decree. It's referring to the decree by the Court of Appeals enforcing the board's order. What about – what do you do with Nathanson, which really seems to recognize that there's a duality to these court orders that would include a very distinct private component, that it really is a private interest that you're enforcing, and yet the private interest seems to have gotten shoved aside in this case? Well, the private interest has been very well described, I think, by a number of circuit courts, like the First Circuit in its decision in oil and chemical and atomic workers. The charging party, the private interest that the charging party has is to present evidence to the board to make sure that his interests are considered. But once you have a board order, it's the board's order to enforce. Yeah, but you have to have a – the board order has to explain why it rejected those arguments. That's what we held in the textile workers case. You have to have an explanation of why the remedial concerns of the aggrieved party or the complaining charging party are not addressed. And the problem here is, as I suggested earlier, I'm having trouble seeing the board's explanation for the waiver of interest over an 11-and-a-half – which strikes me, tell me if I'm wrong – a very long time, 11-and-a-half years for payment for a single person. Again, the answer to that is that there's extensive briefing that the board has presented in which it laid out its reasons, in which it made them very, very clear to Petitioner. This was the February 28th letter that the deputy regional attorney sent to Petitioner. This is the board's opposition to Petitioner's request for review. And in those decisions, the general counsel made clear exactly why, the exact basis for why it was agreeing to this particular settlement agreement, including the 11-and-a-half-year period. And he cited the $150,000 salary. What I saw was, oh, this is an unusually complex case, which, to be honest, sounded like boilerplate. I can't imagine this is anywhere near the complexity you ordinarily deal with. There's no explanation for why this was particularly complex, and there was no explanation for why interest was going to be the straw that broke the camel's back and pushed these people either into bankruptcy or the CEO to wrap up the company. I just didn't see that. And I'm happy to be corrected. I didn't see that in the order that we're reviewing. Your Honor, that order by action of section 102.53d incorporated the reasoning of the general counsel. It was a review of the discretion of the general counsel in settling this case. And so the board – yes? Where did the general counsel explain what was so – I mean, is this really that complex? You've probably seen a thousand – thousands, maybe, of these types of cases. How would you rate this on the complexity spectrum, this remedy? Just the remedial stage. I'm not talking about the prior step. Just the remedial stage. The MACPAY calculation in this case. Really, how complex was it on a one-to-ten scale, ten being the worst you've ever seen? Well, to start with, it was just difficult in that we were dealing with a judgment-proof corporation. But it was also complex. This is a – How often do you deal with judgment-proof – is this really unusual? Well, Your Honor, the compliance – I mean, a number of issues still had to be litigated during the compliance determination. And as the record makes clear, the employer was going to contest the board's position at this compliance determination. And that included the method by which the board calculated the MACPAY term, which was complex in this particular instance because this is intermittent employment. And the comparability of Mr. Dupuis's situation to that of other employees was in question. But it strikes me as a little odd that the company, if it's going to go belly up, if it has to pay $40,000 in interest over an 11-and-a-half-year period, was going to instead spend probably hundreds of thousands of dollars on a lawyer to litigate these issues with you. How was that judgment made? That – I mean, I think that's – well, I mean, what I think you're doing is I think you're pointing us in the – what I think the natural conclusion of what you just said is, is that if it wasn't going to settle, this company was going to be liquidated. And as Judge Cato – And would that be okay? I guess – and this might be my complete understanding. Would it be okay for the CEO to say, I don't like that MACPAY award, you didn't make the deal I wanted to, I'm liquidating the company to avoid paying it? Would you then be able to pierce the corporate veil? Or would you just – would you have to throw up your hands and walk away, or would you be able to pierce the corporate veil? If you've incorporated a company in the United States and that company has limited liability and you're suddenly served with a judgment which exceeds the assets of your corporation and you decide to wind up, I believe you're entitled to do that under American law. I just want to be clear. There's a finding here somewhere you can point me to that says if interest is included, that will exceed the assets of the corporation? If you look at the general counsel's explanation of his decision, that is not the reason why interest was waived. Interest was waived as a concession in settlement. It's on the theory that in order to get this settlement agreement executed and bring the employer to the table, there had to be some sort of sweetener, and that was the sweetener. Okay, so the interest wasn't part of the judgment. You didn't waive interest because they were judgment-proof and they couldn't afford to pay the interest. You waived the interest so that they wouldn't litigate the MACPAY issue. In terms of that inquiry, the interest is actually of no import because the interest would have kicked up the total liability to $250,000. It doesn't matter whether you're talking about $200,000 or $250,000. The company is judgment-proof. It can't satisfy that judgment. I just want to ask you a quick question about the substantially equivalent offer. Petitioner's argument is it's not substantially equivalent to his old job, and your response is you don't disagree with that. The board's response is, well, it's substantially equivalent to the kinds of jobs the employer is now offering, right? Well, we're agnostic as to exactly what other jobs were like back in 2001. But you're right. We believe that in 2011, the terms of that offer were consistent with the terms and conditions of employment offered to other employees employed by the company. At the time. At the time. And our compliance officer spoke with the CEO to make sure that was true. And Petitioner cites a board decision, CASIS Management, which says that it must be a specific unequivocal reinstatement to his former or a substantially equivalent position. It doesn't say anything about existing positions. Substantially equivalent to his former position. No, but I would point to the case law that we cited in our brief, which shows that an offer of reinstatement, in order to be valid, has to be for the terms of employment currently in effect for similar employees performing similar duties. Under an order like this, which says his existing job, his pre-existing job, or a substantially equivalent one, can mean, I mean, suppose hypothetically he was being paid $100 an hour. And now the employers run into trouble and they're only paying $50 an hour. So would that be substantially equivalent? Potentially, but, I mean, in this case his salary went up from $200 to $200. It's a hypothetical. I'm trying to find out what. It looks to me like the board's own standard is that it has to be, with language in an order like this, it has to be either his old job, which we agree doesn't exist, right, or one that's substantially equivalent. That's right.  It has to be substantially equivalent to existing jobs. That's your position, right? I would say that those are the missing words, I guess, in that decision, yes. What missing words? Oh, yeah, but you agree they're not there, right? When the board said either his existing job or a substantially equivalent job, it meant a substantially equivalent job at the moment of reinstatement, yes, Your Honor, and substantially equivalent in terms of the duties and responsibilities encompassed by that job. The idea of making him whole is precisely to put him in the position he'd be in if he hadn't been terminated, which means he would be getting today's package. Right. Exactly, Your Honor, and over the course of the back pay period. Wait a minute. Oh, sorry, go ahead. He was given every raise. If you look at the calculations, he was given every raise that other people were given over the course of that 10-year period. Okay. You got anything else? Yes. Oh, go ahead. Sorry. Why have the checks been withheld from him? I believe there's an easy answer to that, and that's because the settlement agreement hasn't been approved. All right. Now, in your brief, you said that the settlement agreement had to be approved by Mr. Dupuis and had not been, and cited to pay BSA 29 and 30, which is the settlement agreement, but I can't find anything in there that relates to this at all that says that it requires his signature. It's not valid until it's signed by him or anything of the sort. Well, I believe at least elsewhere in the brief, if not there, we make clear that the Board does have the ability to approve a settlement agreement over the objections of a charging party. That's long settled law. So why didn't you? Sorry? So why didn't it? If the Board could have approved the settlement agreement. But it did. But then it provided, the Board provides this review process. And so the Board went through that review process, and the review process eventuates in a final Board order, which Mr. Dupuis is now petitioning for review of. I'm still at a loss to know where. So you're saying it's not really in the agreement itself. It's not in the settlement agreement, contrary to the brief. Or maybe I'm misreading it. That particular citation might be the snake. Maybe the brief is, maybe I'm misremembering, maybe it just says the settlement agreement isn't final until this proceeding has been resolved. That's right, Your Honor. That's your position. That's our position, and that's why the Board has not. Now why is that? Because there's no, I don't understand how there could be any scenario in which he doesn't get at least the monies that are being paid monthly already under the existing settlement agreement. I think there's definitely a possibility of that. Let's say that this case goes back to a compliance determination, and the compliance determination finds that he's owed much less money than the money that we've accumulated so far. I mean, one of the complexities that could arise in a compliance determination is that it could be found that the interim earnings that he has actually coincided with weeks or with times in which the company was not hiring him. There was no business coming through the door. He could have a $0. He hasn't challenged the calculation of back pay, at least on this appeal. That's totally true, but you're talking about contractuals. No. So if you go back for a compliance in this case, the back pay wouldn't change, other than whether you'd have to include interest or not. But anything he's gotten would be offset against any recalculation. The back pay calculation has to be litigated. The back pay calculation is anything but final. It's some spreadsheets that are compliant. I think you made a point in the brief that it was based on certain assumptions. It was based on certain assumptions that the compliance officer made. It could be challenged if this agreement's wiped out and you start it over. We start over. We go before an ALJ. We have to prove up his entitlement to any damages. Why wouldn't the money at least go into escrow or his interest instead of sitting in somebody's drawer where the checks might not even be valid anymore? We didn't want to cash the checks. We didn't want to put them into a bank account. They're in escrow in the sense that we are keeping them under lock and key in the regional office. They're withholding taxes. They're stale. No bank's going to take a 3-year-old bank. Actually, the region has talked with the company, and the company has indicated that in the event that this settlement agreement is approved, it will renew those checks or it will honor those checks. Then why is he paying? I don't understand why they're withholding taxes and he's paying taxes, yet he doesn't have the money and the checks aren't even valid anymore. That's a regrettable issue of lack of communication. I'm not an expert in taxes. I'm not sure whether the company should be or should not be reporting those as employee payments to the IRS. But Mr. Dupuis certainly is under no obligation to pay taxes. Do you normally put this kind of stuff in escrow? I mean, is this normally how you handle it when a settlement agreement is being challenged? You normally just collect them in a drawer? You don't put it in escrow? You don't cash it? Is this normal? This is the accepted manner that we go about these things, yes. Desk drawers. Excuse me? Everything goes in a desk drawer, all these checks. I believe in the state. That's the way the board does it? That's the way that – I mean, there's no formal procedure that we have for this situation. This is the way that the regions have traditionally handled this situation. It's a rare one. This is an exceedingly rare situation. They don't actually open an escrow account when they say they will? We put them in escrow. I think in the record, the region makes clear that it didn't put them in an escrow account. It didn't put them. I understand that. But to think it would have a fiduciary obligation to put it in an interest-bearing account. That amounts to much these days, but nonetheless. Perhaps that would be the ideal way to go. The board didn't believe that it had that legal authority to open up an account and then deposit those checks on behalf of petitioner when petitioner was objecting. That's what an escrow account is. It's not on his behalf. It's in escrow. That's what escrow means. Well, the checks were made payable. But I believe it's another step if we are to actually deposit these in a bank account and exert that additional indicia of ownership or possession of them. And why didn't he have an obligation to pay taxes on it? He's getting W-2s from the employer. He's not getting. They're telling the Internal Revenue Service that they paid him this money. Well, certainly, I mean, the mere fact that the employer says they paid you money doesn't mean you have to pay taxes on it. Right. They didn't actually give you the money. Really? He terminated liability. He could have challenged that and not paid the tax, right? But then he would have been open in the long term. If he loses here, he would have been open to interest and penalties. He could have very easily contacted the region. The region would have been more than happy to help him out in this situation and talk to the IRS on his behalf, explain the situation. Your agreement required the employer to withhold the tax. That's what seems unusual. Your settlement agreement required withholding of tax, and yet you didn't set up any mechanism in advance. Well, the agreement didn't really go into effect. The agreement didn't go into effect because of this review proceeding, right? And so the employer has not been delivering these checks pursuant to any obligation under that agreement. It's been doing so as an indication of its good faith to comply with the agreement. The region asked the company to do that, and the company complied. I just have one quick question about the reinstatement offer. Put aside the terms, the timing of it, a December 21st offer that has to be accepted by January 3rd. And the only, as I read it, in their offer, the only way he could not accept it and still get another offer was if he needed more time to wrap up with his existing employer. It didn't say anything about vacations or anything like that. It just struck me as quite an abrupt schedule, particularly over holidays, and didn't allow any leeway for that. At least as I read the language, it was if you need time to wrap up with your existing employer. And then he was going to be in this netherworld just waiting to see if anything else ever came along. I think that the words of the region were actually – No, the words of the offer from the companies, the reinstatement offer from the company, were they not if you need more time to wrap up with your employer. But what the regional director – but what the deputy regional attorney told him was that the company would re-offer, would re-extend an offer to him the next time that a project came up. Oh, right. But if he didn't take – then he was going to be left in this ambiguous status if something didn't come up because why couldn't he have an offer that would say this is a really short notice and look for something that would give him a little more guarantee further down the line. I think that the employer under the circumstances gave him as much of a guarantee as is possible when it's essentially a subcontracting company. This company can only offer him a job insofar as a new project opens up. It's going to have to be on a project-by-project basis. It's going to be somewhat adventitious. It's not going to be – and it's not ideal, but this was an intermittent project-by-project employment situation that Mr. Dupuy was in. You earlier referred us to the regional director's opposition to the charging party's request for board review. That's right, Your Honor. And you also said earlier that if the matter were to go – if the settlement were not reached or were eviscerated, vacated, the employer could litigate from scratch questions like his obligation to mitigate, what his actual earnings were elsewhere, how many months he would have been employed, and so on. That's right. But the document, the opposition to the charging party's request, says the compromise was as follows. The principal amount of back pay, 124, was established as 100% of the back pay, less the usual adjustments for interim earnings and mitigation expenses. Right. So that had already been determined. How could it have been relitigated? Well, those – certainly, like, when the compliance officer first sits down with a discriminatee, they ask for information about their interim earnings. But then exactly to – exactly when – so one of the issues in this case is exactly when, over the course of the back pay period, Dupuy would have been employed by the company. He wouldn't have been employed during the entirety of the back pay period. And there's an important question as to how to match up the quarters when he would have been employed with the employer and the quarters when he would have been earning these interim earnings. If they're in the same quarter, then they cancel out. If not, then he gets some back pay. Well, it says to go on, from the opposition document, the resulting sum of 201,000 represented 100% of NLS's back pay liability as of the date of reinstatement. According – what's left unstated there, but which I think is easy enough to read in, is that that's according to the compliance officer's unlitigated assumptions, which are not binding on anyone until they're litigated before an ALJ approved by a board order. It does say that this was the compliance settlement. It doesn't – I mean, you have to still read in something more. Well, you're right. I would admit that over the course of the general counsel's briefing, he does sometimes say that this represents 100% of back pay. Well, more specifically, it's 100% of the back pay that the compliance officer calculated. And those calculations are only so good as an ALJ, and the boards were – are to subsequently determine. The board has set out – the board's remedy, I think, made reference to Independence Day, correct? That's right, Your Honor. Okay. And there, four specific criteria are set forth. Was there any attempt to check the boxes in the documents you referred us to, to say we looked at these four criteria? Yes, Your Honor. That's in the general counsel's opposition to Mr. Dupuy's request for review. Okay. Which starts at 108? One second. Yes, at 108, I think. And so that would be BSA – it would be the board supplemental appendix, pages 115 to 119, in which the general counsel steps through that four-part framework. I see. Independence Day dealt with four. Right. So then your answer to Mr. Dupuy's objection that this was a case where the board should have pierced the corporate veil resonates or corresponds to the Independence Day criterion as to whether there's been fraud, coercion, or duress, particularly fraud, right? Well, if there is any. If there had been fraud, it would probably fall under that prong. Yes, Your Honor. Well, I mean, if there had been fraud, Independence Day would have indicated that the corporate veil should be pierced. Exactly. And I was just trying to say that it would be considered under that prong. Okay. Now, where in the checklist does it say there's no fraud? 115 to 119.  Yeah, where does it say there that there was no fraud? I can find it. I mean, I know this is back and forth in the briefs as well as to whether just what the board had as a basis for determining that the employer had not, for instance, reduced its scale of operations in order to make itself judgmental. And if I could explain a little bit just how this board review process works and what evidence is available at every stage. The compliance officer had all of the information available to her. The compliance officer had been in consultation with the company, had seen their financial records. The company's employment records. Their payroll records, their financial statements, their balance sheets, their bank accounts. She had seen all of that, most of which, except for the payroll records, most of which was confidential, which she couldn't, which under an agreement that she had with the company, she was not going to share with Mr. Dupuis. But she, on the basis of that, generally explained her reasons for not seeking to pierce the corporate veil. That information was available to the general counsel as well when this case was taken up on appeal from the region to the general counsel here in Washington, D.C. But then after the general counsel approved the regional director's decision, at that point, the formal record began. At that point, the confidential information was placed to the side and was not submitted to the board. What the board had before it was all of the briefing and all of the information that's currently in the certified list before this court. So the board was considering the same information as this court is considering. And one of the things that it was relying on, crucially, was its knowledge of the region's experience in dealing with these matters, the region's reliability, the lack of any history of the region doing anything untoward with regard to these settlements, so that the board did implicitly... And the board... The record makes clear that this is what the board was doing. The board was, as part of its exercise of discretion, relying upon the experience and trustworthiness of the regional personnel and the general counsel who had reviewed all of the information and were making statements about the fact that this corporation was judgment-proof. Right. Don? Yes, thank you. Don? Thank you. Thank you. Let's see. Mr. Dupuis, you and we used up all your time, but you can take two minutes if you'd like it. First, let me address the checks. Those checks are made payable to me. The board could not cash them and put them in an escrow account. That's one of the reasons why. And that's set forth in the agreement on Paragraph 12 on Page 56 of the Joint Appendix. Judge Millett, on the question of job reinstatement, it was not unconditional. And there was a problem. I'm working. They present this offer with not all the information I needed, but it says, if you accept this offer, we will present your resume to the client for their consideration. Your participation in the project will, of course, be subject to the approval of the client as an industry practice. It was not an unconditional offer of reinstatement, and that's contrary to board policy. Is that the way it worked when you were working there? Do you see my point? In other words, when you were working there, was each assignment conditional on the client's acceptance? It depends. Well, I worked there twice, and under two different circumstances. The second time I worked there, the time I got, I contacted the client company because I knew the project manager. He had also worked for NLS. He was my supervisor at NLS. He left and went to work for El Paso. And so I needed to go to Massachusetts because my mother was terminally ill. I called up Rick. I knew he had a project going up there, and I said, Rick, can you get me on this project? He says, when the time comes, you know, give the folks up at NLS a call. I'll see what I can do. So that's how I got onto the job. So your concern, I take it, in this case is that you couldn't quit your existing employer because there was a chance that this prospective employer would just say no, and then you'd be out of a job. That's correct, Your Honor. Could they have given your resume to this client before they made this offer to you and said, if he accepts, would you be willing to take it? Was there something they could have done to deal with this inherent contingency in the nature of this business? Perhaps, but not in such a short time frame. That's why I asked the compliance officer for, you know, the pushback that the deadline's 30 days because I had obligations, and maybe we could have worked something out, but I didn't get those 30 days. And... Okay, thank you, Mr. Dupuy. Thank you, Your Honor. We'll put the case under advisement. Thank you. Okay. Yeah, and then the add is over there. Thank you.
judges: Tatel, Millett, Ginsburg